JhUNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DAVID A. MENDOZA,                    )
          Plaintiff,                 )
                                     )
     v.                              )          CAUSE NO.: 2:05-CV-385-PRC
                                     )
JO ANNE B. BARNHART,                 )
Commissioner of the Social Security  )
Administration,                      )
          Defendant.                 )


**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by the Plaintiff, David A.

Mendoza, on October 21, 2005, and on a Plaintiff's Memorandum in Support of Summary Judgment

or Remand [DE 20], filed by Mendoza on March 29, 2006.  Mr. Mendoza seeks judicial review of

a final decision of the Defendant, the Commissioner of the Social Security Administration, in which

he was denied Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

under Sections 216(1), 223, 1611, and 1614 of the Social Security Act.  For the following reasons,

the Court denies Mendoza's request to reverse and remand the decision of the Commissioner.


**PROCEDURAL BACKGROUND**

On August 13, 2001, Mr. Mendoza filed an application for DIB and SSI, alleging a disability

onset date of March 2, 2001.  The applications were denied initially on October 31, 2001, and upon

reconsideration on April 2, 2002.  Mr. Mendoza then filed a timely request for a hearing before an

Administrative Law Judge ("ALJ") on April 30, 2002.  The hearing before ALJ William J. Wilkin

was conducted on February 14, 2003, in Gary, Indiana.  At the hearing, testimony was heard from

Vocational Expert ("VE") Thomas Grzesik and from the claimant who was represented by counsel, attorney James Balanoff.

On April 24, 2003, the ALJ issued a decision finding Mendoza not disabled and denying benefits. The ALJ considered Mendoza's age, education, past work experience, RFC, and the testimony of the VE in making the following findings:

(1)     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

(2)     The claimant has not engaged in substantial gainful activity since the alleged onset date.

(3)     The claimant is impaired by reason of Crohn's disease, and headaches, with a history of brain aneurysm. These impairments are "severe" based on the requirements in the Regulations (20 CFR §§ 404.1520(b) and 416.920(b)).

(4)     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(5)     I find the claimant's allegations regarding his limitations are largely but not wholly credible for the reasons set forth in the body of the decision.

(6)     I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

(7)     The claimant has the following residual functional capacity: he can lift/carry 25 pounds frequently and 50 pounds occasionally, and sit, stand and/or walk 6 hours each during an 8-hour day. However, the claimant is restricted to low stress jobs. In addition, he must be allowed to use the restroom at irregular intervals.

(8)     The claimant's former job as a janitor/commercial cleaner did not require the performance of work-related activities precluded by his restrictions (20 CFR §§ 404.1565 and 416.965).

(9)     The claimant can perform his past relevant work as a janitor/commercial cleaner.

2

(10)     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

R. at 21-22.

Mr. Mendoza filed a timely Request for Review of Hearing Decision with the Appeals Council on May 15, 2003, which was denied on March 11, 2005. Therefore, the ALJ's decision of April 24, 2003, is the final decision of the Commissioner.

A Complaint was timely filed by Mr. Mendoza with this Court on October 21, 2005; on March 29, 2006, Mr. Mendoza filed a Plaintiff's Memorandum in Support of Summary Judgment or Remand; and on April 10, 2006, Mr. Mendoza filed a corrected Plaintiff's Memorandum in Support of Summary Judgment or Remand. On May 25, 2006, the Commissioner filed a Defendant's Memorandum in Support of Commissioner's Decision. Mr. Mendoza then filed a Reply Brief on June 19, 2006.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636 and 42 U.S.C. § 405(g).

## FACTS

### A. Background

Mr. Mendoza was born on May 1, 1963, and was 39 years old at the time of the hearing. He stands 5'6" inches and weighs approximately 200 pounds, with his highest weight on record at 216 pounds. Mr. Mendoza is not married and has one minor child. He obtained a bachelor of arts degree in history, and his past relevant work includes working as a cook and a janitor. Mr. Mendoza currently works approximately seven hours a week as a janitor after slowly reducing his hours from

3

an original 35 hours per week approximately five years prior to his hearing testimony with the most recent reduction from 10 hours per week to seven hours per week approximately six months prior to the hearing.  The ALJ found that the Mr. Mendoza had not performed substantial gainful activity since his alleged onset of disability.

## B. Medical Evidence

Mr. Mendoza has a history of Crohn's disease, a disorder which causes inflammation of the digestive track.  He has seen or contacted treating physician Dr. James Monks at least forty-seven times since June 28, 1999, for this condition.  The record documents visits with Dr. Monk through January 2003.  Many notations indicate mere telephone refills of medication.  These visits show a history of complaints by Mr. Mendoza of rectal pain, gas pain, nausea, lower back pain, and dizziness, and of numerous refills of Tylenol 3 with codeine.  In January 2000, Dr. Monks noted that Mr. Mendoza's loss of 25 pounds on a diet had helped his arthritis, that his Crohn's disease was about the same with no medication being used, and that Mr. Mendoza had pain preceding and following bowel movements.  In August 2000, Dr. Monks noted that Mr. Mendoza was generally doing okay, using Tylenol 3 to control stools and pain.  Notes from a July 11, 2001 visit to Dr. Monks reveal that Mr. Mendoza has a long term history of Crohn's disease, a history of anal fistulas, osteoarthritis primarily in the hips but also affecting the shoulders, hypertension, and a brain aneurysm.  Dr. Monks also noted that Mr. Mendoza was doing better, was eating well, had gained about 10 pounds, and was feeling much better although he had discontinued his blood pressure medication because he was too dizzy.

Later in July 2001, Mr. Mendoza saw Dr. Patel, who noted that Mr. Mendoza was playing in a local band, was using marijuana recreationally, and was working part-time as a janitor.  Mr.

4

Mendoza reported feeling fatigued for the previous one or two months.  An examination of his abdomen and extremities revealed no abnormality, and a neurological examination was within normal limits.  Mr. Mendoza was noted to have hypertension with no control for the previous few weeks, osteoarthritis primarily in the hips but also affecting the shoulders, a history of Crohn's disease with anal fistulas, a history of brain aneurysm status post surgery and subsequent hypertension, and a history of deep vein thrombosis.

On November 22, 2000, Mr. Mendoza was treated in the emergency room at Saint Margaret Mercy Healthcare Center for a severe headache in the frontal area.  Mr. Mendoza felt a constant, dull pain similar to the pain experienced from a brain aneurysm, and he had vomited three to four times that day.  A CT scan of the head revealed no acute pathology or any change from a previous study of April 15, 1998.  Mr. Mendoza was diagnosed with cephalgia (i.e. headache) and was given a prescription for Tylenol 3 with codeine.  In a subsequent visit to Saint Margaret Mercy Hospital on May 23, 2001, an upper GI and small bowel series revealed a sharp v-shaped retraction of the second and third portion of the duodenum, apparently secondary to Crohn's disease involving the Terminal Ileum; a 15 cm segment of Terminal Ileum showing loss of valvular conniventes and dilatation, indicating involvement by known Crohn's disease; no evidence of obstruction, and a ring of calcification measuring 1 cm in size at the right upper abdomen.

During a consultative examination by Dr. Suresh Mahawar on October 16, 2001, Mr. Mendoza complained of headaches and low back, hip, and shoulder pain.  Mr. Mendoza told Dr. Mahawar that he has constant pain that gets worse with lifting and prolonged standing or sitting but that gets better with medication and that he cannot walk more than three blocks or climb more than one flight of stairs.  Additionally, Mr. Mendoza  complained of dull headaches behind his eyes that last for at least a few hours and that come and go at least 15 times a month.  No abnormality was

observed on musculoskeletal and neurological examination, Mr. Mendoza exhibited no difficulty in performing in-office tests, and Mr. Mendoza's gait and station were normal. Dr. Mahawar's impressions of Mr. Mendoza were that he has low back and hip pain with history of ankylosing spondylitis, shoulder pain that could be due to arthritis or tendonitis, and headaches with a history of aneurysm.

In October 2001, Dr. J.V. Corcoran reviewed Mr. Mendoza's medical records for the Social Security Administration and concluded that Mr. Mendoza could lift up to 50 pounds occasionally and 25 pounds frequently, stand/walk about six hours in an eight-hour day, sit about six hours in an eight-hour day, and perform unlimited pushing/pulling. Dr. T. Crawford concurred in this opinion in April 2002.

In October 2001, F. Kladder, Ph.D. reviewed Mr. Mendoza's medical records for SSA and concluded that Mr. Mendoza has no medically determinable mental impairment. J. Pressner, Ph.D. concurred in this opinion in April 2002.

In a medical report filled out on December 26, 2001, treating physician Dr. Monk diagnosed Mr. Mendoza with Crohn's disease and identified symptoms of chronic diarrhea, fatigue, fistulas, and bloody diarrhea. While Dr. Monks has treated Mr. Mendoza since 1988, he noted that treatment has become more regular during the prior 18 months. Dr. Monks also noted that stress exacerbates Mr. Mendoza's symptoms and that, although he goes through episodic flares, symptoms are always there to some extent. Dr. Monks also noted that Mr. Mendoza often experiences pain or other symptoms severe enough to interfere with his attention and concentration, Mr. Mendoza requires ready access to a restroom, and Mr. Mendoza will indefinitely have to take unscheduled restroom breaks when he only has minutes of advance notice. Finally, Dr. Monks notes that Mr. Mendoza's impairments are likely to produce "good days" and "bad days."

Dr. Monks noted in June 2002 that Mr. Mendoza reported that he felt dizzy and got headaches and gas after eating.  Mr. Mendoza also reported that he felt increased stress due to a family situation. In August 2002, Mr. Mendoza was reportedly feeling okay.  In October 2002, Mr. Mendoza reported that his symptoms were about the same, with anal fistulas and burning with stools.  He reportedly had panic attacks that respond well to Ativan.  In January 2003, Mr. Mendoza was doing fairly well, and his fistulas were less painful.  He was seeing a psychiatrist at Tri-City and was on Paxil.

During his intake at the Tri-City Community Mental Health Center on December 17, 2002, Mr. Mendoza denied deficits in attention span or memory, and no such deficiencies were evident to the social worker conducting the interview.  Mr. Mendoza reported that he experienced depression and anxiety over his Crohn's disease and family issues and that he was experiencing panic attacks daily.  He reported playing bass and drums in a band called "Reality Check."  Mr. Mendoza was scheduled to see Dr. Kang.

During his first session at Tri-City on January 22, 2003, with Gary Alvarez, Psy.D., Mr. Mendoza reported constant worry that he will get another aneurysm.  Mr. Mendoza also noted that he worries about the current home environment for his children because his girlfriend's family are "yellers."  Ativan and Paxil had been prescribed by Dr. Kang for Mr. Mendoza, and it was noted that he is interested in attending an anxiety group.

During a Medical Assessment of Ability to do Work-Related Activities taken on February 6, 2003, it was noted by Dr. Kang that Mr. Mendoza is poor at dealing with work stresses, is poor at understanding, remembering, and carrying out complex job instructions, and that his limitations include clinically significant depression and anxiety symptoms with difficulty concentrating, a lack of interest, lack of motivation, and lack of energy.  He advised that Mr. Mendoza avoid rigorous or strenuous physical activities and that Mr. Mendoza may not perform well in a job that requires a high

level of concentration or attention.  Dr. Kang also opined that Mr. Mendoza had a fair ability to follow work rules; relate to co-workers; maintain attention/concentration; and understand, remember, and carry out detailed or simple job instructions.  However, he opined that Mr. Mendoza had a poor ability to handle complex job instructions.  In support of his opinions, Dr. Kang cited "depression with difficulty concentrating/lack of interest, motivation & energy and anxiety.  And physical conditions [as previously described."  R. at 252.  Dr. Kang also opined that Mr. Mendoza had only fair ability to behave in an emotionally stable manner and relate predictably in social situations.

A second examination with Dr. Mahawar on March 13, 2003, included an impression of abdominal pain and listed a weight of 216 pounds.  Mr. Mendoza reported that his headache pain was very sharp but that he had mild headaches every day.  He stated that he could not walk more than three to four blocks or climb more than one flight of stairs.  He reported that he got pain in his abdomen, hips, and back due to Crohn's disease and that the pain sometimes radiated to his low back. He had epigastric pain every day, which improved with Vicodin.  Extremity, spinal, neurological, and musculoskeletal examinations did not reveal any abnormality.  Mr. Mendoza's gait and station were normal, and Mr. Mendoza had no difficulty getting on or off the exam table, tandem walking, walking on toes, walking on heels, squatting and arising, or hopping on one leg. Dr. Mahawar opined that Mr. Mendoza could lift up to 30-40 pounds occasionally and 20-30 pounds frequently; stand/walk a total of four hours per day, two hours at a time; and sit without limitation.  He opined that Mr. Mendoza could climb, stoop, crouch, kneel, and crawl occasionally and balance frequently. He further opined that Mr. Mendoza had mild limitation in pushing/pulling with his lower extremities and restricted exposure to temperature extremes and vibrations.

8

### C.  Plaintiff's Testimony

At the hearing, Mr. Mendoza testified that he has worked as a cook for approximately three years but had to quit in 1986 due to Crohn's disease. In July 1993, Mr. Mendoza began cleaning offices for a professional cleaning organization. Mr. Mendoza testified that he worked alone and that his duties included dusting, taking out the trash, vacuuming, and cleaning bathrooms. Mr. Mendoza began working approximately three hours a week, slowly increasing his work load until he was working 35 hours a week. When Mr. Mendoza began having problems with painful fistulas, he slowly began decreasing his workload until he got to seven hours a week, which he presently works. At the time of the hearing, Mr. Mendoza worked Saturdays and Sundays for approximately three and a half hours each day, arriving at work between 2:00 and 4:00 p.m. Mr. Mendoza testified that he cannot work 40 hours a week because many customers required him to be on the job at a certain time but that Crohn's disease causes him to have several painful bowel movements in a short span of time which makes keeping regular work hours difficult. Mr. Mendoza testified that he must lie on a couch or take a hot bath for about two or three hours while he is having successive bowel movements. He further testified that each bowel movement becomes more painful, and, when this happens while he is at work, he cannot finish his shift. Additionally, Mr. Mendoza testified that he has painful diarrhea almost every day, and that he has three fistulas which are always painful, but most painful when he has a bowel movement. Mr. Mendoza testified that in the last two years these fistulas have become more swollen, more painful, and do not drain properly.

Mr. Mendoza testified that on the day of the hearing, he had used the restroom four times from 7:00 a.m. until 9:30 a.m. Additionally, Mr. Mendoza had to use the restroom once during the hearing. Mr. Mendoza testified that he had taken his codeine pill, which eases his pain and slows down his diarrhea. Mr. Mendoza testified that when he is on medication, he uses the restroom at least

9

five or six times a day for approximately half an hour at a time for a total time of two to three hours. However, he does not take medication often because he experiences side effects such as upset stomach and drowsiness and because the medication is habit forming.

Mr. Mendoza testified that he believes his condition is getting worse and that the fistulas are more painful now than ever. Furthermore, he testified that the medications he has tried over the years for fistulas have not worked. Mr. Mendoza stated that he sees his treating physician, Dr. Monks, approximately two or three times a year. Mr. Mendoza expressed Dr. Monk's belief that surgery would be a radical last-ditch effort to treat his fistulas because surgery is used to drain fistulas, but Mr. Mendoza's fistulas drain on their own, although not before putting him through severe pain. Mr. Mendoza testified that it is painful to sit and that he will become constipated if he sits for a long period of time. Thus, he cannot attend church as often as he would like because kneeling causes his hips to hurt and sitting on the hard benches causes pain and constipation. His constipation feels like a sharp, shooting pain through his back.

Mr. Mendoza testified that he experiences arthritis in his hips and shoulders as a complication of Crohn's disease, which in turn causes pain in his lower back. Mr. Mendoza experiences constant pain, but once a month it becomes so bad that he cannot walk for as long as a week. Mr. Mendoza testified that he must walk with a cane and take medication, but the medication hurts his stomach so he only takes it when necessary. He stated that he cannot go to work when he gets these arthritis attacks and that he must call off work approximately once a month. Mr. Mendoza testified that he must leave his job early or come in late due to medical problems approximately every other weekend.

Mr. Mendoza testified that he stands while working, but standing causes more pain. He also testified that he must clean low areas, which gives him a headache and makes him dizzy. Due to this dizziness, Mr. Mendoza must use a long duster, which is not as effective as the rag he would use if

10

he did not get dizzy spells.  Mr. Mendoza testified that he can lift approximately 20 or 30 pounds but not more than that because it will throw his hip out.  He stated that it is difficult to drive if he has problems with his hips.

Mr. Mendoza testified that he had surgery to repair an aneurysm in March 1998.  However, he continues to get headaches, which have continually gotten worse.  Once or twice a month, Mr. Mendoza gets severe headaches such that he cannot work.  He stated that Paxil has helped his everyday headaches; however, he continues to have headaches two or three times a week that last all day.  Mr. Mendoza testified that he plays bass guitar but is not currently in a band.  Mr. Mendoza testified that he has been having symptoms of dizziness and a general lack of energy for approximately six months.  He testified that he has been diagnosed with depression and has been prescribed Ativan and Paxil.  He also testified that he can drive "pretty good" and that his memory was "pretty good."  R. at 306-07.

### D.  The Vocational Expert's Testimony

The VE testified that Mr. Mendoza's past work as a cook is semiskilled and medium in physical demand while Mr. Mendoza's past work as a janitor is unskilled and light in physical demand.  The VE also stated that there are no transferable skills from his past work at the sedentary level.

The ALJ first posed a hypothetical for an individual who is 39 years old with a 12 plus 4-year education, who has worked as a cook and a janitor, has limitations of medium work function, requires a low stress job, and must have the ability to use restrooms at irregular intervals. In response, the VE questioned the ALJ about what he meant by "irregular," to which the ALJ responded that this meant that the individual would need to use the restroom "sometimes, it might be after an hour; sometimes,

it might be, say, you know, two hours. . . . It would be irregular. It, it would be – you know, you couldn't determine, in other words, specifically, that you could go to use the rest room say, on your lunch hour, or something like that; that it would be at indeterminate times." The VE then testified that the individual could not perform the past work of a cook but could possibly perform the past work as a commercial cleaning janitor in a traditional office complex setting or in a "smaller redone house office situation." The VE testified that these janitors usually work after business hours, that there could be people working with this individual in a larger complex but not in a smaller complex, and that they have the ability to stop work to use the restroom. The VE testified that the janitor position is the only unskilled position at the medium level that he knows of that would afford this flexibility. Furthermore, the VE testified that this commercial cleaner position would also be available with the same restrictions at the light level. The VE stated that in the Chicago six-county area, there are approximately 6,000 such full-time occupations at the light level.

The ALJ's next hypothetical was for the same restrictions but at the sedentary level. The VE testified that if the RFC were changed to sedentary work, there would be no positions for Mr. Mendoza.

Upon questioning by Mr. Mendoza's attorney, the VE testified that the commercial cleaner job would only allow six absences a year but would allow twelve absences if it was a collective bargaining job. The VE also testified that a person in the position of hypothetical one who would need a combined total of two hours a day for bathroom breaks would be precluded from performing any work.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.  *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard.  *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).  If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings."  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence.  *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995).  The ALJ is not

13

required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 995 (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

### DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are:

(1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2.

(2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3.

(3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4.

(4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5.

(5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(iv); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004). At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

In his Opening Brief, Mr. Mendoza argues that (1) the ALJ improperly determined that Mr. Mendoza did not meet any listings; (2) the ALJ did not properly consider Mr. Mendoza's past work; (3) the ALJ did not properly consider Mr. Mendoza's arthritis and depression as "severe" conditions;

and (4) the ALJ made an improper credibility finding that ignores SSR 96-7p and 20 C.F.R. §
404.1529.  The Court will address each of Mr. Mendoza's arguments in turn.

### A.  Listings 5.06 and 4.10

As set forth above, if a claimant's impairments meet or medically equal any of the listed
impairments in Appendix 1, the claimant is presumed disabled.  *See* 20 C.F.R. § 404.1420.  The
regulations require the ALJ to decide whether a claimant's impairment is medically equivalent to a
listed impairment by determining whether "the medical findings are at least equal in severity and
duration to the listed findings."  20 C.F.R. § 404.1526(a).  In addition, in determining whether a
claimant has a medically determinable impairment that meets the listed impairments, the ALJ must
consider any medical opinions that are statements from acceptable medical sources, which reflect
judgments about the nature and severity of the impairments and resulting limitations as required by
the regulations.  20 C.F. R. § 404.1527; SS Ruling 96-2p; SS Ruling 96-6p.  However, the claimant
bears the burden of proving that his condition meets or equals the listed impairment.  *See Bowen v.
Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999); 20
C.F.R. §§ 1525, 1526.  In meeting this burden, the claimant must show that he satisfies all of the
requirements of the listing.  *See Maggard*, 167 F.3d at 379-80 (citing *Pope v. Shalala*, 998 F.2d 473,
480 (7th Cir. 1993), *overruled on other grounds*, *Johnson v. Apfel*, 189 F.3d 561, 563 (7th Cir. 1999);
*Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir. 1991)).

In his decision, the ALJ found that Mr. Mendoza is impaired by reason of Crohn's disease
and headaches, with a history of brain aneurysm, that these impairments are "severe" based on the
requirements in the Regulations, but that these medically determinable impairments do not meet or

medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  In his

decision, the ALJ explained:

> Per Dr. Monks' clinic notation of January 2003, the claimant was doing "fairly well,"
> and his fistulas were less painful.  Also, the claimant's Crohn's disease has not
> resulted in symptoms of malnutrition or the like; in fact, at 216 pounds in March 2003
> (Exhibit 13F), it appears he may actually be *gaining* weight.  Finally, the claimant's
> headaches are of undetermined etiology.

R. at 18.  Mr. Mendoza argues that this finding is improper as his impairments meet Listing 5.06 for

"Chronic Ulcerative Colitis" and Listing 4.10 for "Aneurysm of aorta or major branches."


1.  Absence of reference to a specific listing

Before specifically addressing Listings 5.06 and 4.10 for his Crohn's disease and headaches

respectively, Mr. Mendoza first argues generally that the ALJ erred by not explicitly referencing the

relevant listings and numbers in his decision for these impairments such that reversal and remand is

mandated.  However, the Seventh Circuit has not adopted such a standard and has recently declined

to do so.  *See Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004).  Nevertheless, the Seventh

Circuit has held that "where an ALJ omits reference to the applicable listing and provides nothing

more than a superficial analysis, reversal and remand is required."  *Id.* at 370 (citing *Brindisi v.*

*Barnhart*, 315 F.3d 783, 786-87 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir.

2002); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).  Thus, Mr. Mendoza also argues that

the ALJ's reasoning is insufficient to avoid remand.

As with the court in *Rice*, this Court finds that the ALJ's reasoning in this case was not

perfunctory given his treatment of the record evidence in support of both his conclusions at steps

three and five.  *See id.* at 370, 370 n. 5 (reasoning that it is proper to read an ALJ's decision as a

whole and thus considering the ALJ's treatment of record evidence in support of both his conclusions at steps three and five). The ALJ discussed the medical evidence related to both the Crohn's disease and headaches prior to concluding that they did not medically meet or equal a listing. The ALJ discussed in detail the November 22, 2000 emergency room visit for a severe frontal headache, the March 23, 2001 upper GI and small bowel series, the treatment records of Dr. Monks beginning in June 1999 through the most recent records, the consultative examinations by Dr. Mahawar on October 16, 2001, and March 13, 2003, and the records from the Tri-City Community Mental Health Center. This discussion of the evidence led to the ALJ's step two and step three analyses. In addition, the ALJ discussed Mr. Mendoza's credibility and again sufficiently discussed the medical evidence of record in relation to his determinations at steps four and five. The ALJ's determination at step three was thus supported by substantial evidence.

2. Listing 5.06 - Chronic Ulcerative Colitis

In asserting that his impairments meet Listing 5.06 for Chronic Ulcerative Colitis, Mr. Mendoza argues that, although Crohn's disease is not specifically listed in Appendix 1, his history of Crohn's disease and painful fistulas meets the criteria of 5.06 Chronic Ulcerative Colitis. Mr. Mendoza bears the burden of proving that his condition meets or equals this listed impairment by satisfying all of its criteria. *See Maggard*, 167 F.3d at 379. In response, the Commissioner does not argue that Mr. Mendoza has failed to meet the requirements of 5.06 for Chronic Ulcerative Colitis but rather that Mr. Mendoza does not meet the requirements of 5.08 for gastrointestinal disorders.

To be considered disabled under Listing 5.06, a claimant must show that he has chronic ulcerative or granulomatous colitis as demonstrated by endoscopy, barium enema, biopsy, or operative findings, as well as

> A. Recurrent bloody stools documented on repeated examinations and anemia manifested by hematocrit of 30 percent or less on repeated examinations; or
> B. Persistent or recurrent systemic manifestations, such as arthritis, iritis, fever, or liver dysfunction, not attributable to other causes; or
> C. Intermittent obstruction due to intractable abscess, fistula formation, or stenosis; or
> D. Recurrence of findings of A, B, or C above after total colectomy; or
> E. Weight loss as described under § 5.08.

20 C.F.R. Pt. 404, Sbpt. P, App. 1 § 5.06 (2003).

Both Mr. Mendoza and the Commissioner agree that Crohn's disease is not addressed in the Listings.  *See* Pl. Br., p. 11.  However, Listing 5.07 addresses "regional enteritis," which is a synonym for Crohn's disease, the disease with which Mr. Mendoza has been diagnosed.  *See Wright v. Barnhart*, 389 F. Supp. 2d 13, 21 n. 10 (D. Mass. 2005); *Sales v. Apfel*, 188 F.3d 982, 984 n.3 (8th Cir. 1999) (citing *Stedman's Med. Dictionary* 575 (26th ed. 1995)); *Phillips*, 1996 WL 457183 at *3; *see also Stedman's Medical Dictionary* 646 (28th ed. 2006).    Listing 5.07 for regional enteritis, which is synonymous with Crohn's disease, provides:

> 5.07 Regional enteritis (demonstrated by operative findings, barium studies, biopsy, or endoscopy). With:
> A. Persistent or recurrent intestinal obstruction evidenced by abdominal pain, distention, nausea, and vomiting and accompanied by stenotic areas of small bowel with proximal intestinal dilation; or
> B. Persistent or recurrent systemic manifestations such as arthritis, iritis, fever, or liver dysfunction, not attributable to other causes; or
> C. Intermittent obstruction due to intractable abscess or fistula formation; or
> D. Weight loss as described under § 5.08.

20 C.F.R. Pt. 404, Sbpt. P, App. 1 § 5.06 (2003).

Ulcerative colitis,[1] as set forth in Listing 5.06, and regional enteritis,[2] also known as Crohn's disease, as set forth in Listing 5.07, are distinct inflammatory bowel diseases and have been recognized as so in the case law. *See, e.g.*, *Sheets v. Bowen*, 875 F.2d 867, 1989 WL 47444, *2 (6th Cir. May 9, 1989); *O'Neil v. Great Plains Women's Clinic, Inc.*, 759 F.2d 787, 791 (10th Cir. 1985); *Haley v. United States*, 739 F.2d 1502, 1506 (10th Cir. 1984); *Wright*, 389 F. Supp. 2d at 17 n. 4 (citing *Attorney's Textbook of Medicine*, §§ 229.31(4), 229.32(1) (1997)); *Phillips v. Chater*, No. CIV. A. 95-1361, 1996 WL 457183, *3 (D.N.J. June 27, 1996).  Even the website referenced by Mr. Mendoza provides that Crohn's disease differs from ulcerative colitis based on the location and depth of the inflammation.  *See* National Digestive Diseases Information Clearinghouse (NDDIC), Ulcerative Colitis, "What is ulcerative colitis," http://digestive.niddk.nih.gov/ddiseases/pubs/colitis/index.htm.

Notably, Mr. Mendoza does not make any argument in his opening or reply briefs that the ALJ erred by failing to find him disabled under Listing 5.07, the Listing applicable to his severe disability of Crohn's disease.  Therefore, the Court will not consider whether Mr. Mendoza meets the requirements of Listing 5.07.  As for his argument that he meets the requirements of Listing 5.06, Mr.

---

[1] "Ulcerative colitis" is defined as

a chronic disease of unknown cause characterized by ulceration of the colon and rectum, with rectal bleeding, mucosal crypt abscesses, inflammatory pseudopolyps, abdominal pain, and diarrhea; frequently causes anemia, hypoproteinemia, and electrolyte imbalance, and is also less frequently complicated by peritonitis, toxic megacolon, or carcinoma of the colon.

Stedman's Medical Dictionary 408 (28th ed. 2006).

[2] "Enteritis" is defined as "[i]nflammation of the intestine, especially of the small intestine."  Stedman's Medical Dictionary 646 (28th ed. 2006).

 "Regional enteritis," also referred to as Crohn disease, chronic cicatrizing enteritis, distal ileitis, regional ileitis, terminal ileitis, or granulomatous enteritis, is defined as

a subacute chronic enteritis, of unknown cause, involving the terminal ileum and less frequently other parts of the gastrointestinal tract; characterized by patchy deep ulcers that may cause fistulae, and by narrowing and thickening of the bowel by fibrosis and lymphocytic infiltration, with noncaseating tuberculoid granulomas that also may be found in regional lymph nodes; symptoms include fever, diarrhea, cramping abdominal pain, and weight loss.

*Id.*

Mendoza has not offered any evidence demonstrating that he suffers from the separate disease of chronic ulcerative colitis by any of the methods provided for in the listing, which include endoscopy, barium enema, biopsy, or operative findings. He simply argues by way of reference to a website defining ulcerative colitis that ulcerative colitis can be difficult to diagnose because its symptoms are similar to Crohn's disease. Although he contends by way of his own explanation that Crohn's disease medically equals chronic ulcerative colitis and although it appears that Mr. Mendoza suffers from some of the symptoms that may be paired with chronic ulcerative colitis under subparts A-E in order to qualify as disabled under the listing, the fact remains that Mr. Mendoza has not been diagnosed with chronic ulcerative colitis but rather with Crohn's disease. The Court finds that Mr. Mendoza has failed to prove that he meets the requirements of Listing 5.06.

3. Listing 4.10 - Aneurysm of aorta or major branches

Mr. Mendoza also argues that the ALJ's finding that his severe impairments do not meet a listing is in error because his headaches with a history of brain aneurysm fall under Listing 4.10, which is described as an "Aneurysm of aorta or major branches." 20 C.F.R. Pt. 404, Sbpt. P, App. 1 § 4.10. Mr. Mendoza reasons that this listing includes brain aneurysms because intracranial arteries are part of the major branches. However, Mr. Mendoza is not claiming disability based on his aneurysm but rather based on headaches, and Mr. Mendoza does not argue that the ALJ erred at step two of the sequential analysis by failing to find that Mr. Mendoza had a severe impairment due to brain aneurysm. However, even if Listing 4.10 is the appropriate listing for Mr. Mendoza's headaches, as the ALJ recognized that Mr. Mendoza has "headaches with h/o CNS aneurysm," R. at 18, Mr. Mendoza has not offered medical evidence to establish that he meets the listing.

Listing 4.10 as in effect at the time of the ALJ's decision provides:

Aneurysm of aorta or major branches, due to any cause (e.g., atherosclerosis, cystic medial necrosis, Marfan syndrome, trauma), demonstrated by an appropriate imaging technique. With one of the following:
A. Acute or chronic dissection not controlled by prescribed medical or surgical treatment;
Or
B. Chronic heart failure as described under 4.02;
Or
C. Renal failure as described under 6.02;
Or
D. Neurological complications as described under 11.04.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.10 (2003). As argued by the Commissioner, Mr. Mendoza has not offered any evidence that he qualifies under subparts A, B, or C. As for subpart D, section 11.04 provides for neurological complications of "[s]ensory or motor aphasia resulting in ineffective speech or communication" or "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.10 (2003). Again, Mr. Mendoza has not offered any evidence to support a finding of any of these complications. Moreover, neurological testing was reported to be within normal limits. *See* R. at 177A, 205-06, 260. The Court finds that Mr. Mendoza has not met his burden to demonstrate that he meets the requirements of Listing 4.10.


4. Medical expert

Finally, Mr. Mendoza argues that the ALJ should have called a medical expert to advise him on whether Mr. Mendoza's impairments meet a listing. After setting forth the standard for when and how an ALJ may call a medical expert in his opening brief, Mr. Mendoza makes a single statement without factual analysis that "the ALJ erred when he failed to obtain an ME opinion that was needed to determine whether Plaintiff's impairments medically equal the requirements of the listings." Pl. Br., p. 13. Mr. Mendoza argues that a showing of medical equivalence was needed under Listing

5.06; however, as set forth above, his impairment of Crohn's disease is covered by Listing 5.07, and Mr. Mendoza provides no argument why the ALJ erred in finding that he did not meet this Listing and why medical equivalence is needed under Listing 5.06.

In her response brief, the Commissioner addresses SSR 96-6p, which requires a medical expert only if additional medical evidence is received that, in the opinion of the ALJ, may change the State agency medical or psychological consultant's finding that the impairment is not equivalent in severity to any impairment in the Listings. The Commissioner argues that the evidence received after State agency physician's reports would not have changed their opinions such that the ALJ would have required a medical expert. On October 30, 2001, an RFC was filled out by a DDS physician, and on November 1, 2001, a Psychiatric Review Technique Form was filled out by a DDS physician. In reply, Mr. Mendoza identifies a series of medical evidence that came after the State agency physician's reviews, including Dr. Monks' December 26, 2001 Medical Report (R. 230-33), the number of times Mr. Mendoza visited Calumet Internist from February 11, 2002, through July 9, 2002, and Dr. Monks between September 20, 2002, and January 13, 2003 due to his impairments (R.237-38, 248-50), and the psychiatric treatment Mr. Mendoza received from Tri-City Community Health Center on January 6, 2003, where he reported stress, depression, and anxiety. (R.241-47). Mr. Mendoza also references the Medical Assessment of Ability to do Work-Related Activities filled out by Dr. Kang on February 6, 2003, (R. 251-53) and the Medical Assessment to do Work-Related Activities filled out on March 13, 2003 (R. 264).

Although Mr. Mendoza identifies this evidence as coming after the State agency physician reports from 2001, he makes only the broad assertion under SSR 96-6p that this evidence "*may* have changed the opinion of the ALJ," Pl. Reply, p. 5 (emphasis added), without any factual analysis of how this more recent medical evidence differs from the original reports such that the ALJ's opinion

23

would have changed rendering a medical expert necessary given that Listing 5.07 addresses Crohn's disease.  Mr. Mendoza has not met his burden of demonstrating that the ALJ should have called a medical expert to assist with his determination under the listings.

### B.  Credibility Finding

Mr. Mendoza seeks remand on the basis that the ALJ made an improper credibility finding when he found Mr. Mendoza "largely but not wholly credible."  R. at 21.  Social Security regulations provide that, in making a disability determination, the Commissioner will consider a claimant's statements about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work.  20 C.F.R. § 404.1529(a).  However, subjective allegations of disabling symptoms alone cannot support a finding of disability.  *Id.*  The Social Security regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability:  (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms.  20 C.F.R. § 404.1529(a), (c); *see Pope*, 998 F.2d at 482.

The ALJ must weigh the claimant's subjective complaints and the relevant objective medical evidence as well as any other evidence of the following factors:

(1)   The individual's daily activities;
(2)   Location, duration, frequency, and intensity of pain or other symptoms;
(3)   Precipitating and aggravating factors;
(4)   Type, dosage, effectiveness, and side effects of any medication;
(5)   Treatment, other than medication, for relief of pain or other symptoms;
(6)   Other measures taken to relieve pain or other symptoms;

      (7)    Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).  In making the credibility determination, Social Security Ruling 96-7p

dictates that the ALJ "must consider the entire case record, including the objective medical evidence,

the individual's own statements about symptoms, statements and other information provided by

treating or examining physicians or psychologists and other persons about the symptoms and how

they affect the individual, and any other relevant evidence in the case record."  SSR 96-7p at *1.  The

Ruling provides that the "determination or decision must contain specific reasons for the finding on

credibility, supported by the evidence in the case record, and must be sufficiently specific to make

clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reasons for that weight."  SSR 96-7p; *see Steele v. Barnhart*, 290 F.3d

396, 942 (7th Cir. 2002); *Zurawski*, 245 F.3d at 887.

      Moreover, an ALJ is not required to give full credit to every statement of pain or to find a

disability every time a claimant states that he or she is unable to work.  *Rucker v. Chater*, 92 F.3d

492, 496 (7th Cir. 1996).  However, Ruling 96-7p provides that a claimant's statements regarding

symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because

they are not substantiated by objective evidence.'"  SSR 96-7p at *6.  An ALJ's credibility

determination is entitled to substantial deference and will not be overturned unless the claimant can

show that it is "patently wrong."  *See Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir.2006);

*Schmidt v. Barnhart*, 395 F.3d 737 (7th Cir. 2005); *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir.

2003) (citing *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000)).

      In this case, the ALJ stated that he considered the claimant's subjective complaints and

allegations at the hearing and found them "somewhat credible."  R. at 20.  The ALJ explained,

I believe, for example, that his Crohn's disease results in frequent bowel movements and occasional abdominal discomfort, and that he may also sometimes experience headache pain.  On the other hand, Dr. Mahawar's examination findings have been benign on two separate occasions, and there is nothing in the clinical or laboratory findings to support complaints of persistent hip, back and/or shoulder pain. Moreover, the claimant hasn't complained of headaches to Dr. Monks since June 2002, and it is difficult to believe that he could perform in a band if his headaches were as intense and sustained as he reports (Exhibit 7F & 10F).  My sense, then, is that he exaggerates his symptoms to some extent.

*Id*.

Mr. Mendoza first argues that his daily activities are limited by his impairments and cites his hearing testimony setting forth those limitations, which include the need to take a hot bath or lay on the couch for a couple of hours after a bowel movement, his limited driving, and not attending church due to pain.  Pl. Br. at p. 20.  Mr. Mendoza also asserts that, because of his impairments, he experiences several painful bowel movements in a short span of time, everyday headaches, severe headaches two or three times a week that incapacitate him for an entire day, constant pain due to arthritis in his hips, shoulders, and lower back, and feelings of depression and anxiety.  Mr. Mendoza is correct that the ALJ does not address these specifically testified-to limitations on Mr. Mendoza's daily activities in the paragraph addressing credibility as required by SSR 96-7p.

However, despite the ALJ's failure to address the specific impact of the alleged pain on Mr. Mendoza's daily activities in the credibility paragraph of his decision, substantial evidence in the form of the medical reports from Dr. Monks, Dr. Mahawar, and the state agency medical consultant relied on and fully discussed by the ALJ support the ALJ's credibility determination.  For example, the ALJ noted the following medical evidence in his decision.  Dr. Mahawar's physical examination of Mr. Mendoza in October 2001 was unremarkable with no neurological or musculoskeletal abnormalities detected but the impressions were consistent with Mr. Mendoza's reported history, and his physical examination of Mr. Mendoza at the behest of the ALJ in March 2003 was also

26

unremarkable.  In January 2003, Dr. Monks noted that Mr. Mendoza was doing "fairly well" and that his fistulas were less painful.  Moreover, the ALJ did credit Mr. Mendoza's complaints of pain and limitation in daily activities to some extent by finding that his Crohn's disease "results in frequent bowel movements and occasional abdominal discomfort."  In determining Mr. Mendoza's severe mental impairments, the ALJ noted that Mr. Mendoza was apparently responding well to medication and then identified certain daily activities that Mr. Mendoza engaged in such as driving, attending church, watching television, visiting with others, his part-time work as a cleaner, and his occasional performance with a local band.  Although Dr. Monks reported that he could not comment on work-related limitations as he was not familiar with Mr. Mendoza's past work, he did report that Mr. Mendoza can tolerate moderate stress in a work-related situation, can sit without restriction, and must have ready access to a restroom.  The ALJ also noted the exertional and nonexertional limitations as opined by Dr. Mahawar in his March 2003 assessment.  Finally, the ALJ reviewed the October 2001 report of the State agency medical consultant who opined that Mr. Mendoza could perform the full range of medium work activity.

Next, Mr. Mendoza summarily asserts that his "subjective complaints are supported by the medical evidence," Pl. Br., p. 20.  However, he fails to identify any evidence of record for the Court in support of this statement.

Mr. Mendoza also argues that his testimony that he plays bass guitar only recreationally is inconsistent with the ALJ's reasoning that Mr. Mendoza could not play in a band if his headaches were as intense and sustained as he reports.  It is not clear why such a finding is inconsistent given Mr. Mendoza's testimony that he has headaches on a daily basis and that two to three times a week they become so severe such that he is incapacitated for the entire day.  In July 2001 and December 2002, R. at 177A, 243, Mr. Mendoza reported that he played in a band, which was during the time

period that he claims to have been suffering from severe headaches.  His February 13, 2003 hearing testimony, only a few months after the December 2002 statement, that he was not currently in a band but that he played bass guitar recreationally, does not negate the ALJ's reliance on the fact that Mr. Mendoza played in a band while allegedly suffering from headaches of the severity claimed by Mr. Mendoza during the period in 2002.  R. at 302.  In his reasoning, the ALJ also correlates Mr. Mendoza's December 2002 testimony that he plays in a band with the fact that Mr. Mendoza had not complained of headaches to Dr. Monks since June of 2002 in arriving at his credibility determination.

Similarly, Mr. Mendoza disputes the ALJ's reasoning that Mr. Mendoza's failure to complain of headaches between June 2002 and the February 2003 hearing diminishes his credibility.  Mr. Mendoza reasons that he had testified at the hearing that the Paxil was helping with the headaches and that during the post-hearing examination with Dr. Mahawar on March 13, 2003, he again complained of headaches.  However, the ALJ's observation that Mr. Mendoza had not complained of headaches during that intervening time period provided support for the ALJ's conclusion that Mr. Mendoza's complaints of daily and severely debilitating headaches were not fully credible.  As previously noted, this fact is also combined with his testimony regarding playing guitar in a band during the same time period.

Finally, Mr. Mendoza argues that the ALJ erred in finding that there is "nothing in the clinical or laboratory findings" to support complaints of persistent hip, back, and/or shoulder pain when he claims that his medical records show that he suffers from a history of osteoarthritis.  However, the three medical records he cites each contain only a conclusory statement regarding a history of osteoarthritis or pain in those areas based on Mr. Mendoza's oral history to the healthcare provider with no independent clinical or laboratory findings by the given physician offered in support of the conclusory statement.  *See* R. at 177, 206, 261.  Therefore, the ALJ did not err in finding that there

is nothing in the clinical or laboratory findings to support his claims of hip, back, and/or shoulder pain.

Given the deference accorded an ALJ's credibility determination and the "intangible and unarticulable elements which impress the ALJ," *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993), such as a claimant's demeanor at the hearing, the Court finds that Mr. Mendoza has not demonstrated that the ALJ's credibility determination was patently wrong. Overall, the ALJ compared the medical evidence of record with Mr. Mendoza's hearing testimony and explained how they factored into his credibility analysis with sufficient detail to trace the path of his reasoning. *See Schmidt*, 395 F.3d at 747 (citing *Knight v. Chater*, 55 F.3d 309, 315 (7th Cir. 1995)).

## C.  Past Work

Mr. Mendoza contends that the ALJ failed to properly evaluate Mr. Mendoza's past relevant work at Step 4 of the sequential analysis "to demonstrate with substantial evidence that Plaintiff could return to his past relevant work as a janitor/commercial cleaner." Pl. Br., p. 13. Mr. Mendoza argues that the ALJ erred because the practical limitations resulting from the effects of Crohn's disease and headaches prevents him from doing full-time janitorial work. For example, Mr. Mendoza lists the daily irregular, painful bowel movements that occur frequently within the span of two to three hours and in between for which he must lie down or take a hot bath to relieve the pain; the constant pain from arthritis as a complication of Crohn's disease in his hips, shoulders, and lower back, which prevents him from walking approximately once a month; his limited ability to control his pain and symptoms with drugs due to side effects and their habit-forming nature; an inability to sit for more than half an hour because sitting causes painful constipation; and headaches that are incapacitating once or twice a month and that prevent him from bending to low areas by causing dizziness. In

addition to his testimony, Mr. Mendoza cites medical evidence to support these limitations and impairments.

In considering whether Mr. Mendoza can return to his past relevant work, the ALJ "must ascertain the demands of that work in relation to the claimant's present physical capacities." *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984).  Pursuant to Social Security Ruling 82-62, the determination of whether an individual can perform past relevant work requires an examination of

> (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SS Ruling 82-62.  The Ruling also requires the ALJ to set forth an adequate rationale throughout the first four steps of the sequential evaluation:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
> 1. A finding of fact as to the individual's RFC. 2. A finding of fact as to the physical and mental demands of the past job/occupation. 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

*Id*.

First, the ALJ made findings of fact as to Mr. Mendoza's RFC.  *See* R. at 31-32.  The ALJ determined that Mr. Mendoza can perform medium level work with the ability to lift/carry 25 pounds frequently and 50 pounds occasionally, and sit/stand, and/or walk 6 hours each day during an 8-hour day.  Nevertheless, the ALJ limited Mr. Mendoza to low stress jobs and added the requirement that Mr. Mendoza be allowed to use the restroom at irregular intervals.

Second, the ALJ made specific factual findings as to the demands of Mr. Mendoza's past relevant work as a janitor/commercial cleaner. The ALJ found that the work required Mr. Mendoza to empty trash receptacles, dust and vacuum offices, and clean the restrooms. Mr. Mendoza lifted less than 10 pounds frequently and no more than 20 pounds occasionally in the performance of this job. The ALJ also acknowledged Mr. Mendoza's testimony that he performed this work after the office staff had gone home.

Finally, in finding that Mr. Mendoza could return to his past relevant work, the ALJ relied in part on the vocational expert's testimony that Mr. Mendoza's past relevant work was unskilled and performed at the light level and that Mr. Mendoza could perform that past relevant work despite the exertional and nonexertional restrictions set forth in the ALJ's RFC finding. R. at 32. Unlike in *Strittmatter*, in which the Seventh Circuit reversed on the basis that the ALJ's logic was flawed when he found that the claimant's past work was sedentary and that the claimant could perform some sedentary work because not all sedentary work is homogenous as to strenuousness, 729 F.2d at 509, in this case, Mr. Mendoza's past work was at the light level, and the ALJ found that Mr. Mendoza could perform work at the medium level based on factual findings regarding the work performed by Mr. Mendoza. As for the restrictions Mr. Mendoza raises in his brief, the ALJ addressed these in his credibility finding. R. at 32. The ALJ believed that the Crohn's disease results in frequent bowel movements and occasional abdominal discomfort and that Mr. Mendoza experiences headache pain. Restrictions based on these symptoms were provided for in the RFC posed to the vocational expert. However, the ALJ noted that Dr. Mahawar's findings have been benign on two occasions and that there is nothing in the clinical or laboratory findings to support complaints of persistent back, hip and/or shoulder pain. The ALJ also noted that Mr. Mendoza had not complained of headaches to Dr.

31

Monks since June 2002 and that it would be difficult to play in a band with persistent headaches.  As a result, the ALJ found that Mr. Mendoza was exaggerating his symptoms to some extent.

Mr. Mendoza also references the vocational expert's testimony that the hypothetical individual would be precluded from any work on a full-time basis if frequent bowel movements would incapacitate the individual for a two-hour period during the day.  This testimony was in response to the attorney's question regarding hypothetical one with the additional limitation of incapacity and the ALJ's assertion that the incapacity would take place during the work day because otherwise it would not make a difference to the employer.  In his findings, the ALJ addressed Mr. Mendoza's credibility, finding that he exaggerated his symptoms to some extent.  The ALJ also accommodated the symptoms of Mr. Mendoza's Crohn's disease by finding in the RFC that he must be allowed to use the restroom at irregular intervals.  Contrary to Mr. Mendoza's assertion, the ALJ included the restriction of use of the restroom at irregular intervals in his hypothetical to the vocational expert.

Finally, in the alternative, the ALJ found at Step 5 that Mr. Mendoza could perform a significant number of janitor/commercial cleaner jobs in the regional economy.  He found, based on the vocational expert testimony, that approximately 6,000 such jobs existed at the light level of exertion.  He went on to note that the vocational expert testified that, although the DOT lists commercial cleaner as a heavy job, the jobs actually range from light to heavy levels of exertion, and the ALJ accepted this testimony.

The Court finds that the ALJ considered the duties of Mr. Mendoza's specific past relevant work and found that Mr. Mendoza can perform the specific duties of that work despite his exertional and nonexertional limitations.  *See Smith v. Barnhart*, 388 F.3d 251, 252 (7th Cir. 2004).  The ALJ

did not commit legal error in this finding and his determination is supported by substantial evidence of record.

### D.  Mr. Mendoza's Arthritis, Depression & Hypertension

1. "Severe" Impairments

As another basis for reversing and remanding the ALJ's decision, Mr. Mendoza argues that the ALJ made an improper finding when he found that Mr. Mendoza's osteoarthritis, hypertension, and depression are not severe impairments.  The Commissioner responds that any such argument is moot given that the ALJ continued past step 2 based on the other severe impairments of Crohn's disease and headaches.

Although true that, pursuant to 20 C.F.R. § 404.1545, an ALJ must consider all of a claimant's impairments, whether or not "severe," in formulating an RFC, the Court finds that the ALJ nevertheless did not err in finding that Mr. Mendoza did not have "severe" impairments of osteoarthritis, hypertension, or depression.

a.  Osteoarthritis

In his decision, the ALJ finds that there is no objective evidence of an osteoarthritic condition, yet in his opening brief, Mr. Mendoza claims that "it is clearly documented that he has been diagnosed with arthritis."  R. at 20.  In support, Mr. Mendoza cites only the diagnostic impression of the consultative examiner, Dr. Mahawar, which provides, in part, "shoulder pain could be due to arthritis or tendinitis," R. at 206, but which does not constitute objective evidence of arthritis.  Although Mr. Mendoza goes on to describe his own symptoms of pain, he does not offer any other medical evidence, other than the conclusion of a consultative examiner, that the pain is due to

33

arthritis.  It is only in his reply brief that Mr. Mendoza mentions the July 11, 2001 notation in his record from Calumet Internists that he has a history of osteoarthritis.  R. at 177-177A.  However, there is no report of clinical findings in support of this statement regarding the self-reported history of osteoarthritis.

In contrast with Mr. Mendoza's argument in his reply brief regarding the weight an ALJ must give to a claimant's complaints of pain, this determination of whether Mr. Mendoza suffers from a severe impairment of arthritis at step 2 of the analysis is different from a credibility analysis in which an ALJ may not discredit a claimant's testimony as to subjective symptoms of pain merely because they are unsupported by objective evidence.  *See Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).  Here, at step 2, the ALJ is not discrediting the pain from which Mr. Mendoza claims he suffers but rather finds that the record does not demonstrate that the pain he is experiencing is caused by arthritis.  There are no x-rays, CT scans, or MRIs of record demonstrating the presence of arthritis. Clinical examinations failed to show any loss of range of motion or deficits in strength, dexterity, or sensation.  Thus, the ALJ did not err in concluding that Mr. Mendoza did not suffer from a "severe" impairment of arthritis.  Regardless, because the ALJ found that Mr. Mendoza suffers from other severe impairments, namely Crohn's disease and headaches, the ALJ must take into account Mr. Mendoza's credible complaints of pain when determining his RFC and ability to perform his past relevant work or other work in the economy.  The Court has already addressed Mr. Mendoza's arguments related to the ALJ's credibility finding.

As for his depression, Mr. Mendoza argues that the ALJ played doctor by substituting his own opinion for that of Dr. Kang who opined that Mr. Mendoza has clinically significant depression and anxiety symptoms; that the depression gives him difficulty with concentration, a lack of interest, lack

of motivation, lack of energy, and anxiety; and that Mr. Mendoza may not do well in a job requiring high level concentration or attention.  R. at 251-53.

In his determination of "severe" impairments related to Mr. Mendoza's mental impairments, the ALJ noted Mr. Mendoza's treatment through the Tri-City Community Mental Health Center on December 12, 2002, Mr. Mendoza's statements during the intake interview that his problems were related to concerns over his physical health and family issues, Dr. Kang's prescription for Ativan and Paxil, and the therapy session on January 22, 2003.  The ALJ noted that Mr. Mendoza did not complain of depression or anxiety to Dr. Mahawar during the post-hearing consultative examination ordered by the ALJ.  In his findings, the ALJ found that Mr. Mendoza's depression and anxiety are "largely situational, and do not significantly impact any broad area of mental functioning."  R. at 30. The ALJ also found that Mr. Mendoza had only recently begun taking Ativan and Paxil and that he had apparently responded well to the medication.  He further noted that Dr. Mahawar observed appropriate behavior and appearance, normal mood, normal concentration, and intact ability to relate. The ALJ also identified a variety of activities Mr. Mendoza testified that he engaged in.  As a result, the ALJ found no evidence of limitation in the claimant's activities of daily living and social functioning, although he found that depression and/or anxiety may have a mild impact on concentration, persistence, or pace.  However, the ALJ did find that there are no documented episodes of decompensation in the record, and, as such, Mr. Mendoza's mental impairments are not severe.

The Court finds that the ALJ did not play doctor in finding that Mr. Mendoza's depression was not severe at Step 2 of the analysis.  As with his pain allegedly caused by arthritis, the ALJ is obligated to take into account the functional limitations of Mr. Mendoza's depression in the later steps of his analysis, and the Court finds that the ALJ reasonably accommodated limitations caused by any mental impairment by restricting Mr. Mendoza to low stress work based on the

35

recommendations of Dr. Kang and Dr. Monks. The ALJ reasoned that, although Dr. Kang rated Mr. Mendoza as fair or poor in ability to make most occupational, performance, and personal-social adjustments necessary for gainful employment, some of these conclusions are inconsistent with other evidence of record such as Mr. Mendoza's intake interview, Dr. Mahawar's examination, and Mr. Mendoza's own testimony regarding his memory, and his past work as a janitor/commercial cleaner. The Court finds that the ALJ's determination that Mr. Mendoza's depression was not severe does not contain legal error and is supported by the substantial evidence of record.

Finally, Mr. Mendoza argues that the ALJ erred by not considering the effects of Mr. Mendoza's hypertension in his RFC finding even though it was not found to be a "severe" impairment. Mr. Mendoza does not offer a reply to the Commissioner's response to this argument. As set forth above, 20 C.F.R. § 404.1545 requires that all medically determinable impairments must be considered when assessing RFC. In his decision, the ALJ noted that Mr. Mendoza's hypertension was controlled, R. at 18, and, thus, did not consider the hypertension further in his determination. The Court finds that this finding was not in error as Mr. Mendoza does not identify any physical limitations resulting from his hypertension that have not been taken into consideration by the ALJ in his RFC much less reference any medical evidence of record in support of any such limitations.


2. Listings

Regarding his arthritis and depression, Mr. Mendoza argues that both meet or medically equal a listed impairment. As an initial matter, the Court has already determined that the ALJ did not err at step 2 of the sequential analysis in finding that Mr. Mendoza's arthritis and depression are not "severe" impairments such that no analysis regarding the listings under step 3 is necessary. Nevertheless, the Court finds that, even if Mr. Mendoza's arthritis and depression were severe, he

36

has not satisfied his burden of demonstrating that the conditions meet the requirements of the relevant listings.

First, Mr. Mendoza asserts that his arthritis medically equals a listing in 1.00, which addresses the musculoskeletal system, because he is unable to walk for as much as a week once a month due to his arthritis, thus satisfying the general functional loss requirement of the musculoskeletal listings as set forth in 1.00B.  However, Mr. Mendoza does not specifically identify *which* of the many listed impairments within the broad category of Listing 1.00 he suffers from and how his condition medically equals the specific listed impairment.  Even considering the general guidelines set forth in Listing 1.00, of which Mr. Mendoza has addressed the functional loss requirement, Mr. Mendoza does not cite any evidence of record in support of the requirements under C of the listing regarding the diagnosis and evaluation of musculoskeletal impairments, under D of the listing regarding the findings of a physical examination, which, must be based on objective observation rather than a report of the claimant's allegations, under H regarding documentation, or under I regarding treatment. The Court finds that Mr. Mendoza has not met his burden of demonstrating that he meets a listing based on his arthritis.

As for his depression, Mr. Mendoza argues that he meets or medically equals impairments listed in 12.00 for mental disorders.  Again, Mr. Mendoza's argument is generic as to the entire category of mental disorders without reference to a specific disorder and the requirements to qualify for that listing.  Again, the Court finds that Mr. Mendoza has not met his burden of demonstrating that he meets the requirements of any listing for his depression.

**CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ's determination was supported by substantial evidence and was not fraught with the legal errors asserted by Mr. Mendoza.  Therefore, the Court **DENIES** the Plaintiff's Memorandum in Support of Summary Judgment or Remand [DE 20].  The Court **REAFFIRMS** the ALJ's decision in all respects.

SO ORDERED this 17th day of January, 2007.


s/ Paul R. Cherry_____
MAGISTRATE JUDGE CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record

38